IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| PAUL R. SHIRES, # 153262, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  2:04cv59-MEF |
| | ) | (WO) |
| MARC SONNIER, *et al.*, | ) | |
| | ) | |
|     Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, the inmate plaintiff, Paul R. Shires ("Shires"), complains that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by hindering, delaying and failing to provide him adequate medical care. Specifically, Shires alleges that defendant Dr. Sonnier refused to treat his Hepatitis C and consistently denied him treatment for a chronic back injury. Shires also complains that defendant correctional officials Hadley and Perkins refused to allow him to see a 'free world' physician, and forced him to perform work in violation of a doctor's note which resulted in pain and injury to him. Finally, Shires complains that defendants Sonnier and Hadley conspired to retaliate against him for complaining about the lack of medical treatment for his back pain.[1] Shires seeks compensatory and punitive damages, injunctive relief and permission to be treated by free world physicians, including an orthopaedic specialist.

---

[1] Shires contends that Dr. Sonnier and Warden Hadley agreed to require Shires to perform jobs without regard to his chronic back condition. As evidence of this conspiracy, Shires points to his transfer from a general prison library job to a job in the laundry.

The defendants have filed special reports and evidentiary material pursuant to the orders of the court. The court has previously determined that the special reports should be treated as a motion for summary judgment. The plaintiff was provided an opportunity to respond to the motion and has done so. Upon consideration of the motion, pleadings, responses and evidentiary material filed in support of and in opposition to the motion, the court concludes that the motion for summary judgment is due to be granted.

**FACTS**

The facts are relatively simple and undisputed. At all times relevant to this action, plaintiff Paul Shires was incarcerated at the Elmore Correctional Facility.[2] During his incarceration at Elmore, Shires complained that he suffers from a chronic back injury that results in pain and discomfort. On a number of occasions, Shires reported to sick call complaining that his back, legs, hip and neck hurt. He was prescribed Percogesic and given a back support. On July 7, 2003, Shires requested stronger pain medication and was prescribed Flexeril.[3] Shires has consistently received Percogesic and Tylenol for his pain.

On January 31, 2003, an x-ray of Shires' lumbar spine revealed diffuse osteopenia consistent with osteoporosis. However, the x-ray showed no evidence of significant alignment abnormalities. On May 7, 2003, Shires had x-rays of both hips and knees. The

---

[2] Shires has since been transferred to the Atmore Community Based Work Release Facility. *See* Doc. # 40.

[3] Shires was originally prescribed Vioxx which was not approved. Consequently, he was prescribed Flexeril.

x-rays of his hips revealed "minimal osteoarthritic spurring on the acetabular rim." X-rays of his knees revealed "minimal osteoarthritic spurring on the patella" but "[n]o fracture or any acute bony abnormality" was noted. A June 11, 2003, x-ray revealed a "mild compression fracture . . . involving the T12 vertebral body, of indeterminable age." The remainder of the examination was "unremarkable." A lumbar spine x-ray on July 7, 2003, evidenced no bony problems and a bone scan was normal.

As a result of Shires' complaints, another x-ray was scheduled for September 26, 2003. That x-ray revealed the following.

> There is grade I anterolisthesis[4] of L5 on S1, secondary to degenerative facet changes. There is diffuse osteopenia and there appears to be a compression deformity of T12 of uncertain age.
>
> IMPRESSION:
>   1.   OSTEOPOROSIS.
>   2.   COMPRESSION DEFORMITY AT L5-S1.
>   3.   DEGENERATIVE FACET CHANGES AT L5-S1.

An examination on November 26, 2003, revealed a limited range of motion and small amount of muscle tightness but no spasms in the back. On December 5, 2003, no back spasms were noted. When the plaintiff was observed on February 23, 2004, no unsteady gait or limp were noticed nor did he appear to be in acute distress.

In addition to his back condition, while at Elmore Shires contracted Hepatitis C. He was diagnosed on May 8, 2002. Medical records demonstrate that Shires' hepatic function was monitored through a series of blood tests on January 6, 2003, February 3, 2003, March

---

[4] Grade 1 anterolisthesis is considered mild. *See* http://www.cedars-sinai.edu/pf_5727.html

6, 2003, May 12, 2003 and June 5, 2003. On July 7, 2003, Dr. Sonnier noted that there had been no increase in Shires' ALTs and Lfts. Shires underwent liver enzyme screening on September 23, 2003.

In January 2004, an attorney for the inmates in the *Brinkley v. Harrelson*, 2:01cv1287-WHA (M.D. Ala. 2002) litigation,[5] wrote to the Alabama Department of Corrections requesting that Shires receive periodic testing to monitor the progression of his liver disease. The attorney reported receiving a handwritten note from Dr. Sonnier indicating that "if Mr. Shires' liver enzyme levels don't increase after 6 months from the time of diagnosis, they will not increase." Consequently, the attorney was concerned that Shires would not receive continued testing.

Although a blood screen on December 10, 2002, was positive for the Hepatitis C antibody, a notation in his medical records on February 5, 2004, indicated that his liver enzymes had not been elevated since his 2002 diagnosis. Blood tests were conducted on February 4, 2004, and February 23, 2004.

On March 22, 2004, Dr. Sonnier noted that although Shires has a history of Hepatitis C, his ALT's have been persistently normal. Consequently, Dr. Sonnier requested a non-formulary test to determine whether Shires "is one of the 10-15% [of] patients who has spont[aneously] cleared the HepC virus."

---

[5] This class action litigation involved the working conditions of the inmates at the Elmore Correctional facility's recycling plant.

## DISCUSSION

### A.  Standard of Review

To survive the defendants' properly supported motion for summary judgment, the plaintiff is required to produce some evidence to support his constitutional claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  A plaintiff's mere verification of conclusory allegations is not sufficient to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  Consequently, when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" summary judgment is due to be granted in favor of the moving party. *Celotex,* 477 U.S. at 322; *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607 (11th Cir. 1987).  Where all of the materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex,* 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to a liberal interpretation by the courts, a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a material fact in order to avert summary

judgment. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). The record in this case demonstrates that the plaintiff has failed to establish that there is any genuine issue as to a material fact in order to avert judgment in favor of the defendants.

### B. Deliberate Indifference to Medical Needs

The plaintiff first complains that the defendants were deliberately indifferent to his serious medical needs by refusing to allow him to see a 'free world' physician and also by delaying necessary medical examinations and treatments. To prevail in a suit based on an Eighth Amendment claim concerning serious medical needs, a prisoner must show at a minimum that prison officials acted with deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985). A prison official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health when the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825 (1994). Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Prison officials must have been deliberately indifferent to a known danger before the court can say that their failure to intervene offended "evolving standards of decency," thereby rising to the level of a constitutional violation.

6

*Estelle*, 429 U.S. at 105-06.  The known risk of injury must be "'a strong likelihood, rather than a mere possibility'" before a prison official's failure to act can constitute deliberate indifference.  *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989).  Under this standard, a prison or medical official does not act with indifference by providing medical care that is different from that which a prison inmate desires.  *See Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985).

> The "seriousness" of an inmate's medical needs also may be decided by reference to the effect of delay in treatment. . . . An inmate who complains that the delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.  Further, we have held that "the tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay."  *Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir. 1994) . . . Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

*Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1189-89 (11th Cir. 1994).

The medical records filed in this case demonstrate without dispute that the plaintiff received medical care for his back, hip, knee and neck pain.  Although the plaintiff argues that he should have seen a doctor more frequently, received stronger pain medication, and been allowed to see a free world physician, he presents no evidence that any of the treatments he alleges were delayed or denied created a substantial risk to his health.  It is absolutely undisputed that Shires was not denied treatment. Although Shires maintains that he endured pain while waiting to see the doctor, he has failed to present any medical evidence

7

establishing that he suffered any detrimental effect as a result of the defendants' actions or that the defendants in any way disregarded a substantial risk to his health by delaying medical treatment. *See generally Farrow v. West*, 320 F.3d 1235 (11th Cir. 2003). At best, the plaintiff offers the court nothing more than his own unsubstantiated opinions about the quality of the medical care which he received. The plaintiff's opinions are insufficient to create a genuine issue, and his failure to support his claim with medical or scientific evidence is fatal to it.

Shires relies on an October 20, 1993, return to work note[6] and a 1996 medical note[7] to support his contention that his back injury was more severe than Dr. Sonnier's recognized and that he should not have been assigned to work in the laundry. The plaintiff's reliance on these notes is misplaced. First, the notes are not evidence of Shires' present medical condition; one note is ten years old while the other note is thirteen years old. These notes are immaterial to Shires' current medical treatment. The notes contain no diagnosis that is relevant to the issues before the court. It is mere speculation on the part of the plaintiff that these notes would be appropriate treatment for his conditions at this point in time. *See Brown*, *supra* (A pro se litigant's allegation of contaminated drinking water found

---

[6] The 1993 note was a return to work slip that limited Shires to lifting 50 pounds occasionally and 25 pounds frequently. While the note permitted Shires to work 40 hours a week, it purported to limit his stooping, crawling and bending from occasionally to frequently, not continuously.

[7] The 1996 note indicated that Shires had suffered a broken back in 1993 during which time he had been under the care of an orthopedist for three months. This note purported to prohibit Shires from walking more than 10 minutes, no heavy lifting, i.e. anything over 10 pounds, and inside work. This profile was valid for six months from December 6, 1996 until June 6, 1997.

unsubstantiated and completely speculative because the litigant failed to submit a doctor's diagnosis for any medical examination evidence supporting those allegations). Therefore, it is clear that the plaintiff has failed to establish a genuine issue about deliberate indifference on the part of the defendants with respect to this aspect of his claim.

To the extent that the plaintiff complains that the defendants were deliberately indifferent to his medical needs by failing to monitor or otherwise treat his Hepatitis C, he is entitled to no relief. Shires does not dispute that his Hepatitis C condition was periodically monitored using blood tests and that the results of those blood tests determined that no treatment was necessary. It is clear that the plaintiff's disagreement is with the efficacy of his treatment. Shires' desire for different or additional treatment does not establish a constitutional violation. *Hamm, supra.*

Moreover, even if the court were to assume that the defendants were negligent in the manner in which they handled Shires' complaints, mere negligence in providing medical care is insufficient to violate the Constitution. *Estelle, supra.* In the final analysis, the plaintiff has failed to come forward with any evidence that the defendants knew that he faced as a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. *Farmer, supra.* It is undisputed that the plaintiff received medical treatment for his complaints and that he was provided access to follow-up medical care.

The plaintiff has not shown by medical evidence consistent with FED. R. CIV. P. 56(e) that the treatment he received for his back pain or Hepatitis C was so deficient as to amount

9

to deliberate indifference in violation of the Eighth Amendment. *See Brown, supra*. Consequently, Shires has failed to establish a genuine issue about deliberate indifference on the part of the defendants. *Id.,* at 670. Summary judgment is therefore due to be granted in their favor on this claim. *Celotex,* 477 U.S. at 322-23.

### C. Conspiracy to Retaliate Claim

A conspiracy claim may be dismissed because of the conclusory, vague, and general nature of the allegations. *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). The court has carefully reviewed the pleadings in this case and concludes that Shires' allegations do not establish the existence of a conspiracy. The plaintiff presents no evidence that the parties reached an agreement to violate his constitutional rights. *See Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000) ("In order to establish a § 1985(3) conspiracy claim, [the plaintiff] must show an agreement between "two or more persons" to deprive him of his civil rights."); *Strength v. Hubert*, 854 F.2d 421, 425 (11th Cir. 1988) ("To establish a prima facie case of conspiracy to violate rights protected by § 1983, a plaintiff must demonstrate that the defendants "'reached an understanding' to violate his rights."); *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992) (merely "stringing together" acts, without showing contacts between private person and state actors which could prove that these parties "reached an understanding" to violate plaintiff's rights, is insufficient to demonstrate the existence of a conspiracy). Accordingly, the court concludes that the plaintiff's bare allegations of a conspiracy are insufficient to support a claim for relief under

42 U.S.C. §§ 1983 or 1985. *Harvey*, 949 F.2d at 1133; *Fullman*, 739 F.2d at 556-557. "In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed." *Fullman*, 739 F.2d at 557. The defendants' motions for summary judgment on the plaintiff's conspiracy claim are due to be granted.

## CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the motion for summary judgment filed by the defendants be granted and that this case be dismissed with prejudice. It is further the recommendation of the Magistrate Judge that the costs of this proceeding be taxed against the plaintiff. It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **May 24, 2006**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein*

*v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 11th day of May, 2006.


　　　　　　　　　　　　　　　　　/s/Charles S. Coody
　　　　　　　　　　　　　　　　CHARLES S. COODY
　　　　　　　　　　　　　　　　CHIEF UNITED STATES MAGISTRATE JUDGE